No. 30,429.

THE STATE OF KANSAS, *Appellee,* v. JOHN G. SCHMITT, *Appellant.*

(21 P. 2d 341.)

Opinion filed May 6, 1933.

*Eustace Smith* and *Claude E. Chalfant,* both of Hutchinson, for the appellant.

*Roland Boynton,* attorney-general, *Max Wyman,* county attorney, and *John Fontron,* assistant county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The defendant in this action appeals from a conviction of embezzlement and sentence thereon, assigning as errors

the overruling of his motion for discharge at the close of the state's testimony, the admission of incompetent testimony and the refusal to instruct the jury for his acquittal.

He was charged with the crime of embezzling and converting to his own use one certain negotiable promissory note and the proceeds thereof, both of the value of $3,000, belonging to Peter J. Graber, the defendant then and there being the agent of said Graber. The information also charged the defendant with committing the act as the trustee of Graber, but at the close of the testimony of the state the court, on motion of the defendant, required the state to elect between the two counts and it elected to stand on the agency count.

Appellant insists there is absolutely no evidence that defendant was the agent of Graber but, on the contrary, it shows he was in fact the agent of one Fred Dreiling in the transaction out of which the complaint arose. The defendant and Graber had known each other for many years. Graber was a farmer. The defendant seemed to be handling real estate and oil deals. Fred Dreiling was in the same line of business with an office in Wichita and in some oil deals was a partner of defendant. Nick Dreiling was the father of Fred and lived on his farm in Kingman county. About three weeks before the note in question was given to defendant by Graber, he sold to defendant and Fred Dreiling his interest in an oil enterprise at Le Roy, Kan., for $6,000 and took the note of defendant for that amount, the entire consideration, with the indorsement of Fred Dreiling. In the Le Roy transaction something was said about trading the Kingman county farm in on the deal. Nothing, however, was done of that kind, but shortly after the closing of that deal negotiations began concerning the sale and purchase of the Kingman county farm. Fred, as agent for his father, signed a contract of sale thereof to Graber. The consideration was $9,000, which consisted of the return to defendant and Fred of the $6,000 note they had given to Graber and a note for $3,000 signed by Graber in favor of the defendant. The two notes were delivered by Graber to defendant and he in turn delivered to Graber the contract of Fred for deed to the farm. The evidence shows that it would require the $3,000 to be in cash in order to close the deal, and in some places it is stated that an additional thousand dollars would have to be raised somewhere to close the deal, but as far as Graber was concerned it was to be only $3,000, represented by his note for that amount made

payable to defendant, and he gave it to defendant to get the cash thereon, pay it to the landowner and bring back the deed to the farm.

The defendant immediately indorsed the note and used it at a bank as security for a loan and later sold it to another party and was able to redeem his pledge at the bank and used the proceeds thereof mostly to pay his own debts. None of it reached the landowner. Defendant claims it was by agreement with Fred to be used to develop the Le Roy oil project. The deed to the farm was never delivered to Graber and he later had to pay the.interest on the note and take it up with a new note.

Appellant directs attention to the evidence showing that Fred met defendant at Riverside Inn or the filling station near the home of Graber and gave him instructions, and that defendant went over to see Graber and a couple of hours later met Fred at the Riverside Inn; also to the following from the testimony of Graber:

"Well, when he came first in the morning, he said, 'Now, Graber, I believe I can make the deal.' I said, 'What deal?' He said, 'You can get that Dreiling land now. Fred Dreiling is at Riverside or at the filling station, and I came over to make that deal.' I told him, 'All right.' 'But,' he said, 'it will take $6,000 and the old note back,' the note we held against him. I told him there was ·nothing doing. He said, 'I can't trade'; he said, 'That is my instructions to deal, trade with you that way.' I said, 'There is nothing doing, John. Don't talk to me about a trade.' He said, 'Listen, Graber,' he said, 'I will go back and I will catch Dreiling and maybe we can do better.' And he left, and we were working out there and finally he came back, and he said, 'I have got him down, I can do better.' . . . He left and came back three times. . . . The next time he came back he said, 'Graber, I will take you up. . . . We will make it $3,000.' . . . He went back to Dreiling; he said, 'I will go and see if this is okeh.' He left and came back again and said he had everything fixed. . . . When he came back from seeing Dreiling the last time he said he would take me up, on my $3,000 offer. . . . The last time he came out he said, . . . 'Now I have got it just exactly the way you want it. You have got to give me a new note.' I said, 'John, that is going pretty strong; I hate to give you the paper before you have the deed.' He said, 'You are setting pretty; here it is right in· black and white. You will get your deed in ten days. I have to have this in order to make this deal go.' . . . He had to use the note in order to get that money and give it to Dreiling so he could get the deed for him. . . . His exact language when you finally made the trade was, he said, 'I will trade with you for $3,000 and the old note.' "

The state introduced parts of the testimony of defendant given in a civil action by Graber against him and others in Kingman county

to recover for the note, and in that testimony the following may be especially noted:

"Fred told me he would take that note, the $6,000 note, and $4,000, to go ahead and make the deal, and I says I cannot deal with him. . . . I talked to Mr. Graber early in the morning, and to Mr. Dreiling a couple of hours after that at Riverside Inn. I told Graber that Fred wanted to get the $6,000 note and wants to get $4,000 payment and he says I will not give over $3,000. . . . but I was working for the two of them and at the same time working for myself."

"Q. Do you know how long it was after you had this deal in which you purchased the royalty or the lease from Graber, how long was it that you had the first conversation about this property that is in question here? A. How long before, what period it was between the deals, you mean?

"Q. Yes; how long was it after that that you said anything to Graber about this land deal? A. Graber mentioned it to me first.

"Q. What, when was that? A. Two or three weeks afterwards.

"Q. What did he do? A. Well, I saw Fred Dreiling, I went and seen Fred Dreiling and talking to him about this trade for the wheat farm he got interested in the deal.

"Q. That is the first you knew or talked about the deal? A. Yes.

"Q. About how long was that before the contract was signed here? A. Oh, that was a couple of weeks.

. . . . . . . . . . . . . .

"Q. You had a separate agreement with Mr. Peter Graber? A. And Mr. Graber says, 'I don't care how you plan to settle for that—this four thousand dollars,' he says, 'just so I am giving what I told you for the land.' That was for me to work out, for I was working for the two of them and at the same time working for myself."

The following is found in the testimony of Fred Dreiling, who testified on behalf of the defendant:

"I became acquainted with Mr. Graber about the first part of 1928. First saw him at his farm. I went out there to try and deal him out of a one-third interest in an oil lease he had over at Le Roy, Kan. . . . Had my first conversation with Mr. Graber regarding the Kingman land at his place in the summer of 1928. About two months before this contract was signed on the 25th day of July. . . . I tried to deal for Mr. Graber's interest. I told him I would trade him the Kingman county land for his interest. That was the first conversation in which the Kingman farm was mentioned. Mr. Schmitt had not said anything to me about it at that time."

We cannot agree with appellant that there is absolutely no evidence that defendant was the agent of Graber. It looks to us as if it could more properly be described as being a conflict on that question with not only a preponderance in favor of defendant being the agent of Graber, but sufficient on which to make a finding along

that line beyond a reasonable doubt. The defendant himself said that Graber mentioned the matter to him first and later saw Fred about it, and at another time said he was working for both of them and at the same time for himself. Fred Dreiling, the main witness for the defense, said he had several interviews with Graber on the proposition before defendant said anything to him (Dreiling) about it, and it was defendant who said something to him about it, rather than his engagement of defendant as his agent. More space is given to this testimony because of the earnestness of appellant's counsel that the proof is insufficient, and because it was apparently the theory of all parties during the trial that the agency involved and concerned the negotiations leading up to the consummation of the sale and purchase, which is the usual and general scope of agency in such transactions. However, for the purpose of meeting the charge of agency as contained in the information, it is not necessary to go back that far. It could commence with the delivery of the note by Graber for the purpose of converting it into cash and paying the proceeds to the landowner. In other words, when the negotiations were concluded the note could have been made payable to a bystander and delivered to him by Graber to get the cash thereon and deliver it to the landowner for the deed. Such disinterested party, if he had consented to comply with the request, would have been the agent of Graber, sufficiently to cover the requirements of the information as to agency, if he had embezzled the note or its proceeds. But in this case we do not have to separate the transactions. The evidence is all one way for the concluding part and beyond a reasonable doubt from the beginning.

One can be an agent of a purchaser even for the purpose of collecting a commission for his services, the same as being an agent for the seller of real estate. (*Miller v. McGinnis*, 104 Kan. 524, 180 Pac. 267.)

Appellant calls our attention to the general rule that the declarations of one assuming to act as agent are not admissible to prove his agency, but such rule does not extend to evidence of admissions against his interest, as it was in this case. (*Blake v. Bremyer*, 84 Kan. 708, 115 Pac. 508; *Lamb v. Lemon*, 103 Kan. 607, 177 Pac. 4; and 21 R. C. L. 821.)

Appellant cites *Schick v. Warren*, 86 Kan. 812, 122 Pac. 872, on the question of an agent attempting to serve both parties to a transaction, where it states that the agency for the adverse party

is not to be inferred unless the circumstances are clear. This is in harmony with the general rule that one cannot serve both parties unless they know fully of such arrangement. This only applies here to the expression of the defendant himself that he was serving both. An agent serving both sides of a transaction might not be able to collect a commission, but if he did in fact serve both and embezzled from either or both, this general rule as to compensation for such services would not relieve him from the penalty for the crime.

It is said that Graber has recovered a judgment in the district court of Kingman county covering his entire loss in this transaction, but it is the state that is here prosecuting for the violation of a criminal law. We find no error in the proceedings.

The judgment is affirmed.